UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AHMED SINGLETON,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Action No. 19-16592 (MCA)<br><br>OPINION |

This matter has been opened to the Court by Ahmed Singleton's ("Singleton" or "Petitioner") motion to vacate pursuant 28 U.S.C. § 2255 ("Motion"). For the reasons explained in this Opinion, the Court denies the Motion and the request for an evidentiary hearing and also denies a certificate of appealability.

I.     **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

On November 2, 2016, Singleton was indicted in the Sixth Superseding Indictment (the "Indictment") returned in United States v. Corey Hamlet et al., Crim. No. 14-220 (MCA). Specifically, Count One charged Singleton and others with knowingly and intentionally conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. § 1962(c); Count Eighteen charged Singleton and others with conspiracy to distribute 280 grams or more of crack-cocaine, contrary to 21 U.S.C. § 841(a)(1), (b)(1)(A), in violation of 21 U.S.C. § 846; and Count Twenty charged Singleton and others with conspiracy to distribute and possession with intent to distribute more than one kilogram of heroin, contrary to 21 U.S.C. § 841(a)(1), (b)(1)(A), in violation of 21 U.S.C. § 846.

On July 11, 2017, Singleton entered a guilty plea to Counts One, Eighteen, and Twenty of the Sixth Superseding Indictment. Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the plea agreement called for a nineteen-year prison sentence, a five-year term of supervised release, and a special assessment of $300 (the "Stipulated Sentence"). *See* Crim. No. 14-220- 08, Plea Agreement, ECF No. 232 (hereinafter the "Plea Agreement"). Both parties agreed that the Stipulated Sentence was reasonable taking into account all of the factors under 18 U.S.C. § 3553(a). *Id.* at 5.

As part of the Plea Agreement, Singleton agreed "to stipulate at sentencing to the statements set forth in Schedule A." *Id.* Singleton expressly agreed in Schedule A to stipulate to: (i) conspiring with others to distribute more than one kilogram of heroin and more than 280 grams of crack-cocaine; (ii) attempting to intimidate a witness called to testify against Singleton at trial; (iii) that Singleton was a member of the Grape Street Crips; and (iv) that Singleton's distribution of heroin and crack-cocaine was in furtherance of, and facilitated by, the New Jersey set of the Grape Street Crips, an enterprise, as defined in 18 U.S.C. § 1961(4). *See* Plea Agreement at Schedule A, ¶ 1(a)-(d).

The Plea Agreement also provided that Singleton agreed that the "appropriate sentence to be imposed is a stipulated term of nineteen (19) years, regardless of the advisory range under the United States Sentencing Guidelines." *See* Plea Agreement, at 5. Singleton further agreed in the Plea Agreement that should the Court accept the terms of the agreement, it is "bound to sentence Singleton to the stipulated term of nineteen (19) years' incarceration" under Federal Rule of Criminal Procedure 11(c)(1)(C)." *Id.*

The Stipulated Sentence provided for a term of imprisonment substantially below the advisory guidelines range. As set forth in the final Presentence Investigation Report ("PSR"),

Singleton's offense carried a base offense level of 30.[1] PSR ¶ 118. The PSR also assigned multiple enhancements to the base offense level, including a two-point enhancement for possessing multiple firearms during the commission of the offense pursuant to U.S.S.G. § 2D1.1(b)(1); a two-point enhancement for using violence during the offense conduct pursuant to § 2D1.1(b)(2); a two-point enhancement for maintaining a premises for the purpose of distributing a controlled substance pursuant to U.S.S.G. § 2D1.1(b)(12); a two point enhancement for engaging in witness intimidation pursuant to § 2D1.1(b)(16)(D); and a four-level enhancement for Singleton's role as an organizer or leader of the criminal activity pursuant to U.S.S.G. § 3B1.1(a). PSR ¶¶ 119-22, 124. After a three-point reduction for Singleton's acceptance of responsibility, the PSR calculated a total offense level of 39. PSR ¶¶ 128-30. Combined with a criminal history category III, Singleton faced an advisory Guidelines range of 324-405 months had he proceeded to sentencing without the benefit of the Plea Agreement. PSR ¶ 196.

At his plea hearing, Singleton confirmed, under oath, that he read and discussed the Plea Agreement with his attorney, and that he understood its terms. *See* Plea Hr'g Tr. at 5:9-11, 7:16-8:3, 10:1-12, 10:16-18. Singleton also confirmed he understood that, should the Court accept the stipulations set forth in Schedule A of the Plea Agreement, including the drug quantity, the Court must sentence Singleton in accordance with the Stipulated Sentence and would be prohibited from challenging his conviction or sentence on appeal. *Id.* at 13:11-18, 14:18-23, 15:14. Singleton then allocuted to the offense conduct, admitting under oath that he distributed over 280 grams of crack-

---

[1] Counts One, Eighteen, and Twenty group for guideline calculation purposes because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the count(s). U.S.S.G. §3D1.2(c). Also, the Counts group because the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior. U.S.S.G. § 3D1.2(d); PSR ¶ 117.

cocaine and over one kilogram of heroin. *Id.* at 20:9-14. Singleton also admitted that he attempted to intimate a witness called to testify against him at trial. *See id.* at 19:1-25.

On March 7, 2019, this Court imposed the Stipulated Sentence on Singleton. At the sentencing hearing, held on March 4, 2019, Singleton's counsel addressed the enhancements, and the following exchange occurred between Ms. Cimino and this Court:

> THE COURT: So noted. Thank you.
> Okay. Any objection, Ms. Cimino, to anything
> contained in the final presentence report?
> MS. CIMINO: No, I just want to -- well, yes,
> actually.
> I just want to reiterate, first of all, that the
> Defendant's criminal history category is III.
> THE COURT: I think that's agreed.
> MS. CIMINO: Okay, that's fine.
> And I also want to talk about this paragraph 119
> in the final presentence report, paragraph -- paragraph 124.
> Paragraph 119 speaks about possessing multiple
> firearms during the commission of the instant offense.
> Paragraph 120 addresses the use of violence on at
> least two occasions during the instant offense in paragraph
> 14.
> Paragraph 124 addresses the Defendant being a
> leader or organizer.
> What I want to reiterate for the record, Your
> Honor, is, not having anything to do with the term of
> imprisonment that the Defendant agreed upon, but just that that
> inclusion, relevant conduct, the Defendant did not --
> he pled guilty before Your Honor, he pled guilty to Counts 1
> through 18 and 20, and nowhere did he ever allocute to being
> the leader-organizer of any organization, nor did he plead
> to --

> THE COURT: The issue isn't whether he allocuted. The issue is whether there is evidence in the record demonstrated by a preponderance of the evidence that would support that enhancement.
>
> MS. CIMINO: That's correct, Your Honor, as far as all the conduct is concerned. But I just want a clarification for the record that he did not plead to being a leader-organizer, possessing weapons during the offense, nor did he plead guilty to or allocute to multiple firearms and using violence on at least two occasions. But Your Honor's correct that that conduct is considered for purposes of relevant conduct.
>
> THE COURT: Right. Okay.
>
> MS. CIMINO: Thank you, Your Honor.
>
> THE COURT: Okay. Thank you.
>
> Any other -- so everyone, I think, agrees his history category is III, and Probation has calculated an offense category of -- what is it, 39?
>
> MR. BENVENUTO: That's as set forth in the revised PSR, that's correct, Judge.
>
> THE COURT: And that 39 with a criminal history category of III puts him in a sentencing range of 324 to 405, and the stipulated sentence here is 228 months.
>
> MS. CIMINO: That is correct.
>
> THE COURT: Which is substantially -- frankly, almost half or close to half of what -- at least 40 percent less of what he would have faced if this case went to trial and those issues were proven.
>
> MS. CIMINO: That is correct, Your Honor.
>
> THE COURT: Okay. All right.

Sentencing Tr. 5:5-7:10.

This Court also addressed a letter Singleton wrote to the Court, which claimed that he was never a leader of the Grape Street Crips:

> THE COURT: Okay. So let's begin at the beginning. I want you and I to have a conversation. Let's begin and get out of the way the calculation of your criminal history level, and so -- I mean your offense level.
> You wrote me a letter about the leadership, and so the issue becomes -- two things I want to say about that -- complaining that, I was never a leader of the Grape Street Crips, the RICO enterprise.
> In the detailed report, Pretrial laid out a narrative that sets you up and describes you as a leader of that enterprise. But even if I was -- and I think there's enough evidence here, based on what I read in the report, based on what I know about this case generally through the couple of trials we've had that the Government has demonstrated by a preponderance that you were a leader in this enterprise. But even if I were to take those four points off, it would still put you squarely within the -- just so you know, put you squarely within the same sentencing that you have now. If I were to reduce your offense level by four levels, it would still put you in a 210 to 262 range, and you have a 228, so it doesn't really matter in the scheme of things. But there's ample evidence to find that you're a leader, and there's certainly ample evidence to find that you used firearms as a co-conspirator. That's detailed in the presentence report back at 106 and thereafterward.
> Also, acts of violence are also documented in the presentence report. There also was a question that you were asked directly at your plea about acts of violence, and you

> answered in the affirmative.
>
> So I'm satisfied that there is ample evidence detailed by Probation to place you at a level 39. With an offense level of III, that puts you within a 210 to 200 -- I'm sorry, 324 to 405 range, and that the 228 months which you will receive is a reasonable sentence for all the circumstances that are articulated in the presentence report, including the nature and circumstances of the offense, including a RICO enterprise, a very sophisticated drug-distribution network, use of violence to effectuate that enterprise, and also, I look to avoid unwanted sentencing disparity among defendants with similar records, and your sentence falls squarely within the range of your co-defendants.
>
> So I'm satisfied that this is a reasonable sentence. The 39 is reasonable and supported by the evidence, and I will impose the stipulated sentence as requested by both your lawyer and the Government of 19 years.

Sentencing Tr. 13:2-14:25.

Singleton did not file a notice of appeal. On or about August 12, 2019, Singleton filed the instant Motion, raising two grounds for relief. *See* ECF No. 1. The government filed its Answer on June 3, 2020, and Singleton filed his reply on August 4, 2020. ECF Nos. 8, 11.

## II.    STANDARD OF REVIEW

Title 28, United States Code, Section 2255 permits a court to vacate, correct, or set aside a sentence

> upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255.

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. *See United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)). In considering a motion to vacate a defendant's sentence, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks and citation omitted).

The Court may dismiss the motion without holding an evidentiary hearing where the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. *See* 28 U.S.C. § 2255(b); *Liu v. United States*, No. 11–4646, 2013 WL 4538293, at *9 (D.N.J. Aug. 26, 2013) (citing *Booth*, 432 F.3d at 545–46). Moreover, the Third Circuit has "repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition." *Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010) (citations omitted).

III.    **ANALYSIS**

In the Motion, the Defendant claims that his counsel was ineffective for two reasons. First, he claims that his counsel failed to argue that the evidence against Singleton with respect to the drugs attributed to him was insufficient; and second, he argues that counsel failed to object to certain sentencing enhancements. Singleton also seeks an evidentiary hearing on his claims.

Petitioner asserts that his counsel provided ineffective assistance in violation of his Sixth Amendment rights. Before a petitioner can establish that he was denied his Sixth Amendment right to the effective assistance of counsel, he must make a two-part showing: (1) that his counsel's

performance was so deficient that the attorney was not functioning as the professional counsel guaranteed by the Sixth Amendment; and (2) that he was prejudiced by his attorney's deficiencies, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Under *Strickland*, counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Thus, to prove deficiency, the petitioner must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999). Courts evaluate the reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Ultimately, it is the petitioner who bears the burden of demonstrating that counsel's representation was deficient. *Id.*

Even where a petitioner is able to show that counsel's representation was deficient, he must still demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Strickland*, 466 U.S. at 692–93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

"Defendants are entitled to the effective assistance of competent counsel" during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (quotation omitted). "When addressing a guilty plea, counsel is required to give a defendant enough information to make a reasonably informed decision whether to accept a plea offer." *United States v. Bui*, 795 F.3d 363, 367 (3d Cir. 2015) (internal quotation marks omitted). Where a petitioner accepted a guilty plea based on deficient representation, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*United States v. Kmet*, 806 F. App'x. 109, 112 (3d Cir. 2020) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

The right to effective assistance of counsel also extends to sentencing. *See United States v. Sepling*, 944 F.3d 138, 145 (3d Cir. 2019) (citing *Glover v. United States*, 531 U.S. 198 (2001)). A petitioner asserting ineffective assistance of counsel at sentencing must show that but for defense counsel's "alleged ineffectiveness, he would have likely received a lower sentence." *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005).

a. **Failure to Argue that the Evidence of the Drug Quantity was Insufficient**

Singleton first claims that his counsel was ineffective for failing to argue at sentencing that the evidence against him was insufficient to prove the amount of drugs attributable to his conduct. But that is the same conduct that Singleton stipulated to in his Plea Agreement and admitted to under oath at his plea hearing. Singleton's admissions are sufficient to support his guilty plea. *See United States v. Broce*, 488 U.S. 563, 569-74 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt[.]").

Singleton's Motion does not allege that counsel's provided any deficient advice (or made any omissions) that caused him to accept the plea deal rather than go to trial; nor does he allege in his Motion that his guilty plea was unknowing or involuntary, or that he misunderstood its terms.[2] Indeed, he confirmed, under oath, that he read and discussed the Plea Agreement with his attorney, and that he understood its terms. *See* Plea Hr'g Tr. at 5:9-11, 7:16-8:3, 10:1-12, 10:16-18. Moreover, Singleton confirmed he understood that, should the Court accept the stipulations

---

[2] In his reply, Petitioner belatedly asserts that his counsel gave him deficient advice regarding the way in which the drug quantities are calculated, which the Court addresses below.

set forth in Schedule A of the Plea Agreement, including the drug quantity, the Court must sentence Singleton in accordance with the Stipulated Sentence and would be prohibited from challenging his conviction or sentence on appeal. *Id.* at 13:11-18, 14:18-23, 15:14. Singleton then allocuted to the offense conduct, admitting under oath that he distributed over 280 grams of crack-cocaine and over one kilogram of heroin. *Id.* at 20:9-14. Because Singleton has not plausibly alleged that "but for" counsel's supposed errors, "he would not have pleaded guilty and would have insisted on going to trial,'" *Kmet*, 806 F. App'x. at 112 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)), he has failed to show prejudice and his claim fails as a matter of law under *Strickland*. *See United States v. Fazio*, 795 F.3d 421, 428 (3d Cir. 2015) (finding that defendant could not show prejudice because any possible error on the part of defense counsel was cured by the plea agreement and at the plea colloquy).

Furthermore, any challenge to the stipulated drug quantity would have breached the Plea Agreement. If Petitioner's counsel challenged the drug quantity, the Government would have been entitled to rescind the Plea Agreement, which would have exposed Singleton to a sentencing range of 324-405 months under the PSR. *United States v. Williams*, 510 F.3d 416, 427 (3d Cir. 2007) (acknowledging Government's "right to rescind the plea agreement" or "treat it as unenforceable" once a defendant breaches); *United States v. Swint*, 223 F.3d 249, 254 (3d Cir. 2000) (holding that a defendant's breach of his plea agreement in advance of sentencing excused the Government from its obligation to move for a downward departure).

Singleton also argues that the Government could not prove that he, Singleton, sold at least 280 grams of crack-cocaine and one kilogram of heroin. As noted by the government, this argument is misplaced because Singleton pleaded guilty to a drug-driven RICO conspiracy. Moreover, the PSR documented, in great detail, Singleton's and his coconspirators' role

overseeing the supply and sale of measurable amounts of crack-cocaine and heroin in the area of Sixth Avenue and North Fifth Street (the "Fifth and Sixth area"). PSR ¶ 64 ("Justin Carnegie and Ahmed Singleton are long-time members of the NJ Grape Street Crips who were actively involved in the Enterprise's distribution of heroin. Carnegie and Singleton used and shared a dedicated cell phone…to manage and conduct their high-volume heroin distribution business, including to purchase distribution quantities of heroin and to accept orders for the purchase of brick and bundle quantities of heroin"); PSR ¶ 66 ("[T]he Carnegie-Singleton Phone sent or received 27,753 calls and text messages, or an average of 84 calls and text messages per day - the overwhelming majority of which related to orders for the purchase and sale of heroin. Based on a conservative estimate of calls and texts intercepted between March 30, 2015 and April 29, 2015, the overwhelming majority of which related to the purchase and sale of heroin, Singleton distributed at least 260 bricks of heroin."); PSR ¶ 101 ("In addition to their distribution of heroin, Carnegie, Singleton, and other gang members distributed quantities of crack cocaine. Between May 2013 and May 2015, Carnegie and Singleton distributed at least 280 grams of crack cocaine"). The PSR further detailed the numerous instances in which Singleton is captured discussing selling narcotics on both that designated phone and his own personal cell phone. PSR ¶¶ 66-72, 74-99.

In his reply, Singleton alleges for the first time that his counsel misadvised him as to the manner in which drug quantities are calculated and stated erroneously that every sale of heroin could be accumulated and charged as one amount. In support of his argument, Singleton cites to *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019), decided on April 2, 2019, which clarified the effect of *Alleyne v. United States*, 570 U.S. 99 (2013), upon the distribution and possession elements of 18 U.S.C. § 841(a)(1). There, the Third Circuit held that the provisions of § 841(b)(1)(A) and (b)(1)(B) attach to each discrete act of distribution or possession because they

specify facts that increase the statutory penalty, and so, under *Alleyne*, constitute an "element of a distinct and aggravated crime," 570 U.S. at 116, that must be submitted to the jury, *see Rowe*, 919 F.3d at 759. As a result, the jury may not "combine the amounts distributed or possessed" at discrete instances to find the drug quantities specified in § 841(b)(1)(A) and (b)(1)(B). *Id.* at 761; *see also United States v. Williams*, 974 F.3d 320, 360 (3d Cir. 2020).

The holding in *Rowe* postdates Singleton's conviction and is not applicable to his case. *Rowe* held that with respect to distribution or possession with intent to distribute, the quantity to be used for sentencing is from a single distribution. *Rowe*, 919 F.3d at 760. This is not relevant to Singleton's sentencing for conspiracy to distribute because the quantity used for a conspiracy charge is not limited to a single transaction, but rather the amount distributed during the duration of the conspiracy that can be attributed to the defendant. That is, "'[b]ecause the drug quantity for conspiracy is an offense-specific determination of the quantity involved in the entire conspiracy, those drugs need not be possessed by any one conspirator at one specific time.'" *Britt v. United States*, No. 18-16357 (PGS), 2020 WL 3249118, at *11 (D.N.J. June 16, 2020) (quoting *United States v. Perrin*, No. 2:14-CR-205-2, 2019 WL 3997418, at *3 (W.D. Pa. Aug. 23, 2019)). As such, Singleton's counsel did not provide deficient advice regarding the manner in which the drug quantities are calculated, and any challenge to the drug quantity based on an anticipated decision in *Rowe* would have been unsuccessful.

In sum, Singleton stipulated to the quantity of drugs and to his sentence. He has not demonstrated that his plea was coerced or involuntary, and he has failed to demonstrate that his counsel was ineffective or that he was prejudiced. Indeed, his counsel negotiated a favorable plea agreement. For these reasons, the Court denies relief as to Ground One of the Motion.

b. **Failure to Argue Against the Sentencing Enhancements**

Singleton also claims that his counsel was ineffective for failing to object to the sentencing enhancements to which he stipulated in his Plea Agreement.

As an initial matter, Singleton is unable to show he was prejudiced by the sentencing enhancements, as the Court imposed the Stipulated Sentence on him based on the negotiated Rule 11(c)(1)(C) Plea Agreement and <u>not based on his Guidelines exposure</u>. As such, Singleton cannot show a nexus between his counsel's silence and his resulting sentence, *United States v. Booth*, 432 F.3d 542, 546-47 (3d Cir. 2005), and his claim fails as a matter of law under *Strickland*. *Cf. United States v. Isaac*, 655 F.3d 148 (3d Cir. 2011) (holding Guidelines errors harmless when such errors have no impact on defendant's ultimate sentence).

Moreover, the PSR also documented, in great detail, evidence supporting every sentencing enhancement Probation found applicable to Singleton, and his coconspirators, including Singleton's leadership role in the enterprise, PSR ¶ 64 ("Singleton, who held the rank of "G" in the NJ Grape Street Crips, was an organizer/leader within the gang and, as such, he had power over dozens of lower-ranked gang members. Among those Singleton supervised were Louis Coston, Trae Roberts, Darrell Johnson, Max Larue, Willie Brooks, and Rakeem Hankerson, all of whom were GSC soldiers."); instances in which Singleton possessed and used firearms, PSR ¶ 106(a)-(c) ("[T]estimony given at the trial of co-defendants established that Singleton and Carnegie had brought a MAC-11 machine gun to the North 5th Street neighborhood."); and Singleton's personal communications and social media posts evidencing both his attempt to tamper with a witness, PSR ¶ 59(a) ("Singleton then told Coston that he (Singleton) had arranged to have fellow gang members, referred to as 'the goons,' in the gallery at the back of the courtroom in order to intimidate F.N., the victim/witness."), and his prior acts of violence in furtherance of the

offense conduct. *See, e.g.*, PSR ¶ 106 ("B.G. identified the individual who had shot him as 'Mushie,' which was one of Singleton's street names"). Singleton also expressly agreed in Schedule A to stipulate attempting to intimidate a witness called to testify against Singleton at trial and allocated to the same at his plea hearing. *See* Plea Hr'g Tr. at 19:1-25.

In his reply, Singleton contends that his counsel failed to explain to him that the enhancement were factored into the base offense level that "determined" his stipulated sentence. Here, however, Singleton's stipulated sentence of nineteen years was much lower than the advisory Guidelines range of 324-405 months. As such, Singleton is unable to show that counsel's alleged failure to explain that base offense level included the enhancements prejudiced him at sentencing. Moreover, his contention that none of the enhancements were applicable is belied by the record. Indeed, he allocated to attempting to threaten a witness, and this Court expressly found at sentencing that ample evidence detailed in the PSR to support the enhancements and place Singleton at a level 39.

Because the Singleton is unable to show that his counsel was deficient for failing to object to the enhancements and is likewise unable to show he was prejudiced by his counsel's silence or failure to explain that the enhancement would increase the base offense level, the Court denies relief on Ground Two.

### IV. CONCLUSION

For these reasons, the Court denies the Motion, denies the request for an evidentiary hearing, and denies a certificate of appealability, as reasonable jurists would not find the Court's assessment debatable. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right."); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An appropriate Order follows.

_____
Hon. Madeline Cox Arleo
United States District Judge

DATED: August 31st , 2022.